UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,     )
    )
    Plaintiff,     )
    )
v.     )     No. 3:19-CR-54-PLR-DCP
    )
DANIEL FRANK CLOSE,     )
    )
    Defendant.     )

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Daniel Close's Motion to Suppress Physical Evidence and Memorandum in Support [Doc. 21]. The Government has filed its response in opposition [Doc. 22]. On November 4, 2019, the Court conducted an evidentiary hearing on Defendant's motion.[1] Assistant United States Attorney ("AUSA") Cynthia Davidson appeared on behalf of the Government. Assistant Federal Defenders Molly Kinkaid and Nakeisha Jackson represented the Defendant, who was also present. At the conclusion of the testimony, the Court took the matter under advisement and allowed the parties the opportunity to file post-hearing briefs. Defendant submitted a post-hearing brief on November 18, 2019 [Doc. 25], and the Government filed a response [Doc. 26] on November 27, 2019.

After reviewing the parties' briefs and arguments, the testimony and exhibits presented at the hearing, and the relevant legal authorities, the Court **RECOMMENDS** that Defendant's

---

[1] For ease of reference and citation, this Report and Recommendation will cite to the November 4, 2019 Transcript [Doc. 24] as "Tr."

Motion to Suppress be **DENIED**.

## I.     POSITIONS OF THE PARTIES

Defendant Close is charged [Doc. 16] with being a felon in possession of firearms and ammunition (Count 1).  Defendant seeks [Doc. 21] for the Court to suppress all physical evidence seized from a trailer[2] at 706 West Bates Street, Rockwood, Tennessee (the "Property") on October 15, 2018.  Defendant contends that the warrantless search of the trailer violated his Fourth Amendment rights, as "[he] was the sole owner and resident of that address," and "had a legitimate expectation of privacy at his home."  [*Id.* at 10].  In his motion, Defendant proactively asserts several challenges to the search of the trailer.[3]  First, he claims the "protective sweep" exception to the warrant requirement is not applicable to justify the search.  [*Id.* at 8].  Second, while Defendant does not dispute that officers had probable cause to arrest him at the Property, he maintains the search of the trailer was unreasonable as it was "not incident to [his] arrest."  [*Id.*].  Finally, Defendant asserts that the third-party consent to search given by Ms. Olivia Isham, his girlfriend and the mother of his infant child, was not sufficient as she did not have common authority over the trailer.  [*Id.* at 9-10].  In his post-hearing brief, Defendant narrows his challenge to the issue of Ms. Isham's consent to the search, maintaining that she did not have authority to give third party consent and that "[t]he violation of [Defendant's] Fourth Amendment rights is not justified by good faith because the officers were aware of material facts that should have prompted them to inquire further as to Ms. Isham's authority over [the trailer]."  [Doc. 25 at 5, 11].

---

[2] The trailer is referred to as a camper or trailer throughout the Transcript.  It was most specifically described by Sergeant Gray as a twenty-foot, tow-behind camper with a side door. [Tr. at 81].

[3] For instance, Defendant notes that he addresses the issue of "protective sweep," anticipating that the Government "may attempt to utilize this exception to the warrant requirement" to justify the search of the property.  [Doc. 21 at 8].

2

The Government responds alleging that Ms. Isham's consent was valid as she had common authority over the trailer in which she cohabited with Defendant and their child. [Doc. 22 at 3-5]. Further, the Government contends that, in any event, the officers acted in good faith in relying on Ms. Isham's consent, and thus, the good faith exception provides an exemption to the exclusionary rule. [*Id.* at 5-8]. In its post-hearing brief, the Government maintains that Ms. Isham had both actual and apparent authority to consent to the search of the trailer, and thus, the search and subsequent seizure of evidence were made after a valid consent. [Doc. 26 at 1]. In addition, the Government points out that law enforcement's receipt of the second firearm was not the result of a search. [*Id.*].

## II. SUMMARY OF THE EVIDENCE

The Government called three witnesses during the November 4, 2019 suppression hearing: Officer Charles Crothers ("Officer Crothers") and Sergeant Dwayne Gray ("Sergeant Gray"), of the Rockwood Police Department, and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Jason Dobbs ("Agent Dobbs").

### A. Testimony of Officer Crothers

Officer Crothers has approximately eight years of law enforcement experience and has worked for the Rockwood Police Department for over a year. [Tr. at 5]. His duties include patrolling, drug intervention, traffic enforcement, and answering calls for service. [*Id.* at 6]. On October 15, 2018, Officer Crothers was working patrol. [*Id.* at 7]. On that date, E911[4] received a call from Kelly Bunch asking that an officer be dispatched to 706 Bates Street. [Govt. Exh. 1].

---

[4] Throughout the transcript, Roane County Central Dispatch or Roane County E911 is referenced in various ways, but will be noted herein as "E911."

3

Ms. Bunch explained that she received two text messages from her sister-in-law,[5] Ms. Isham, stating, "he's lost it, please hurry, send an officer."[6] [*Id.*]. Ms. Bunch also informed the dispatcher that there was a small baby at the residence. [*Id.*]. Another E911 call was received from Loretta Isham,[7] Ms. Isham's mother, who reported that she was near Bates Street, responding to her daughter's text telling her to "hurry, send the police." Loretta Isham also relayed that Ms. Isham told her not to pull up, but rather to have "the law" come to the door because she and Defendant had been fighting and he had a gun. [Govt. Exh. 2]. As Loretta Isham is talking to the dispatcher, Ms. Isham can be heard arriving on scene along with the baby and frantically relating to her mother that Defendant pushed her down with the baby in her arms, pointed a gun at her, and threatened to shoot her. [*Id.*]. Loretta Isham tells the dispatcher that she is taking Ms. Isham and the baby to the Community Center. [*Id.*]. A third emergency call was received from an unidentified female individual asking for an officer to respond to Bates Street and stating she may have heard gunshots from Defendant's house. [Govt. Exh. 3]. Defendant himself also placed a call to E911 requesting that an officer be sent to 706 West Bates Street stating, "my old lady has devised a plan with the next door neighbor" and "she took off on foot with my kid." [Govt. Exh. 4].[8]

Officer Crothers was initially dispatched to 706 West Bates Street [Tr. at 8], but while en route was told to meet Ms. Isham and her mother at the Community Center. [Govt. Exh. 1]. He

---

[5] It becomes apparent from the recorded call that the caller is Defendant's sister, and she represents herself as Ms. Isham's sister-in-law. [Govt. Exh. 1].

[6] The caller states that the text messages from Ms. Isham were sent from Defendant's phone. [Govt. Exh. 1].

[7] Olivia Isham's mother is referred to as "Loretta Isham" by Defendant and as "Rita Isham" by the Government. *See* [Doc. 25 and 26].

[8] Officer Crothers testified that he understood "my old lady" to mean "the significant female in my life, a girlfriend, wife, fiancé." [Tr. at 12].

4

testified that when he arrived at the Community Center, Ms. Isham was distraught and crying. [Tr. at 9]. She told Officer Crothers that she was held against her will in the trailer by Defendant, who was her boyfriend; they had gotten into a physical altercation and Defendant "pistol whipped" her; and Defendant had thrown her and the baby to the ground. [*Id.*]. Officer Crothers stated that he saw a large knot above Ms. Isham's right eye, which he testified was consistent with being struck with a blunt object, such as a pistol. [*Id*. at 9-10]. He said Ms. Isham reported that her phone was damaged, but she was able to get Defendant's phone and call family. [*Id*. at 9].

While Officer Crothers was not wearing a bodycam, he testified that the footage from Sergeant Gray's bodycam was accurate [*Id*. at 10], but did not capture everything he heard or observed on scene. [*Id.* at 53-54]. The bodycam did not capture the entire conversation between Officer Crothers and Ms. Isham, because Officer Crothers began his conversation with Ms. Isham and her mother before Sergeant Gray arrived on the scene, and because Sergeant Gray stepped away to his police cruiser for a period of time in order to look up information in their system. [*Id*. at 54, 58]; [Govt. Exh. 7]. Officer Crothers testified that Ms. Isham told him she lived at 706 Bates and that he understood she lived with Defendant. [Tr. at 11, 32, 57]. He further testified that he asked Ms. Isham if she had the guns, and she responded that Defendant had them. [*Id. at* 13, 51].

Officer Crothers and Sergeant Gray then checked to see whether or not Defendant had any outstanding warrants. [*Id.* at 20]. Dispatch reported that there were several warrants from a pursuit the previous day. [*Id.*]. Other than the arrest warrants, Officer Crothers stated that there were no other flags in the system for Defendant, such as active bond conditions or an active order of protection. [*Id.* at 20-21]. Officer Crothers added, however, that at one time, Defendant had been the victim of a domestic assault, which resulted in bond conditions being placed on Ms. Isham prohibiting her from having contact with Defendant. [*Id.* at 21-22]. He explained that records

5

indicated the case was dismissed in July 2018, which would have resulted in the bond conditions being dismissed at the same time. [*Id.* at 22-23]. He testified that on October 15, 2018, there was no protective order against Ms. Isham in Defendant's favor. [*Id.* at 23; Govt. Exh. 10].[9]

After leaving the Community Center, Officer Crothers, along with Captain Pittman and Sergeant Gray, proceeded to the Property at 706 West Bates Street, where Defendant was arrested outside the trailer. [Govt. Exh. 8]. Defendant was placed in handcuffs and searched incident to his arrest on the active warrants. [*Id.* at 14]. During the search of Defendant's person, the officers found what was suspected to be methamphetamine wrapped in a dollar bill, as well as Ms. Isham's driver's license.[10] [*Id*. at 15-16]. Officer Crothers testified that Ms. Isham's address on her driver's license was 706 West Bates, which was the same information obtained from the Tennessee Criminal Justice Portal. [*Id.* at 19; Govt. Exh. 9].

Officer Crothers detailed that when Defendant was placed in the police cruiser, he tried to kick the windows out of the police cruiser and "jumped his cuffs," meaning that Defendant brought the handcuffs from behind and put them in front of him. [*Id.* at 16]. He stated that Defendant's behavior was consistent with what he had experienced in the past with people on methamphetamine. [*Id.* at 15]. Officer Crothers transported Defendant to the jail and was not involved in any sort of search of the Property. [*Id.* at 39]. Officer Crothers testified that all of the evidence seized was turned over to him, because it became his case, and he was responsible for preparing the incident report. [*Id.* at 41-42]. The incident report listed the following seized

---

[9] While the address for Ms. Isham is noted as 429 N Front St, Rockwood, Tennessee, on the October 30, 2017 Arrest Warrant, her address on the November 16, 2017 Appearance Bond is noted as 706 Bates Street, Rockwood, Tennessee. [Exh. 10].

[10] In the Transcript, Ms. Isham's driver's license is interchangeably referred to as her identification or I.D.

items: two handguns, two 9mm magazines and ammunition, and 1.5 grams of methamphetamine. [*Id.*]. When questioned about why Ms. Isham's driver's license was not noted on the report as evidence, Officer Crothers explained that the license was not seized, because there was no reason to believe that it was evidence. [*Id.* at 46]. He surmised that it was either returned to Ms. Isham or left on the scene. [*Id.*]. He further explained that for purposes of victim notification associated with Defendant's arrest warrant, Ms. Isham provided her mother's address of 128 North Front Avenue, Rockwood, Tennessee, because her residence at Bates Street was rendered unlivable. [Tr. at 49-50].

###### B.     Testimony of Sergeant Gray

Sergeant Gray has been with the Rockwood Police Department since 2005. [Tr. at 63]. His duties include patrolling, calls for service, taking reports, state and local laws and code violation enforcement, supervising officers, and approving reports. [*Id.* at 64]. On October 15, 2018, Sergeant Gray testified that he was responding to a domestic call with weapon involved at 706 Bates Street. [*Id.*]. While en route to Bates Street, Ms. Isham was able to get out of the house and meet up with her mother, so Sergeant Gray and Officer Crothers met them at the Community Center on Chamberlain Avenue. [*Id.* at 64-65]. Ms. Isham stated that Defendant "had been tearing up the trailer, was violent, had not let her leave, hit her in the side of the head with a handgun." [*Id.* at 65]. Sergeant Gray stated that Ms. Isham told them she was residing at 706 Bates Street and that the address matched Ms. Isham's car registration, which he pulled from the state portal system. [*Id.*]. He further testified that Ms. Isham indicated that Defendant had firearms. [*Id.*].

Sergeant Gray was present at the time of Defendant's arrest but was called away to respond to a disorderly subject incident. [*Id.* at 66, 80]. He testified that Captain Pittman later called him back to Bates Street, explaining that Ms. Isham was going to meet them there. [*Id.* at 66-67].

Hannah Close, Defendant's sister, had called E911 reporting that Ms. Isham needed to return to the residence to retrieve items for herself and the baby. [*Id.* at 67; Govt. Exh. 5]. When he arrived at Bates Street, Sergeant Gray told Ms. Isham, "I would like to look in the trailer to locate the gun that [Defendant] had." [*Id.* at 68]. He stated that Ms. Isham told him that he could and that he followed her into the trailer. [*Id.* at 68, 88]. Sergeant Gray described the trailer as having been "ripped apart," with the outside panels and the ceiling ripped out so that the inside of the trailer was visible; the refrigerator was tipped over; and the contents of cabinets had been pulled out. [*Id.* at 68]. He stated that items of women's clothing as well as baby items were visible to him inside of the trailer. [*Id.*]. Sergeant Gray testified that he found one of the firearms, a loaded SCCY 9mm handgun, partly covered in the sink on a stack of dishes but that he was unable to locate a second gun. [*Id.* at 69, 88; Govt. Exh. 11]. He stated that due to the condition of the trailer, it was difficult to move around. [*Id.* at 69]. After looking the best he could for the second firearm, Sergeant Gray "left [Ms. Isham] there with her mother and her sister-in-law[11]" to get her things and the baby items. [*Id.* at 69-70]. He also advised Ms. Isham to call if she located the second gun. [*Id.* at 72; Govt. Exh. 11].

Approximately fifteen minutes after leaving the Property, Hannah Close called E911 to report that she and Ms. Isham had located the other gun. [*Id.* at 70; Govt. Exh. 6]. Sergeant Gray was advised by dispatch that Ms. Isham wanted him to return to the Property to recover it. [*Id.* at 70, 73; Govt. Exh. 11]. When he arrived, Ms. Isham handed him a loaded Taurus G2C 9mm handgun along with a loaded 9mm magazine. [*Id.* at 71, 73; Govt. Exh. 11]. Ms. Isham told Sergeant Gray that she found the gun in the bedroom ceiling and pointed out to him the area of the

---

[11] Sergeant Gray referred to Defendant's sister, Hannah Close, as Ms. Isham's sister-in-law.

8

ripped ceiling where she located it. [*Id.* at 70-71].

On cross examination, Sergeant Gray acknowledged that he never directly asked Ms. Isham if she lived in the trailer [*Id.* at 93]; however, he testified that while en route to the initial call, he pulled up information from the state portal for both Defendant and Ms. Isham, which listed 706 Bates as each of their addresses. [*Id.* at 100]. Sergeant Gray explained that it was his practice to look up information on people when responding to a call, particularly those individuals, with whom he has not dealt in the past. [*Id.*].

### C. Testimony of Agent Dobbs

Agent Dobbs is a Special Agent with ATF. [*Id.* at 101]. He is responsible for investigating violations of federal law dealing with firearms, explosives, arson, and violent crime narcotics. [*Id.*]. Agent Dobbs testified that he became involved in this case after adopting it for federal prosecution. [*Id.*]. He explained that state or local law enforcement will contact ATF when they make an arrest and feel the case may be worthy of federal prosecution—in this case, a convicted felon in possession of a firearm. [*Id.*]. Agent Dobbs stated that after receiving the report from the Rockwood City Police Department, he pulled Ms. Isham's information from the Tennessee Criminal Justice Portal, which revealed her residence as 706 West Bates Street, Rockwood, Tennessee. [*Id.* at 103; Govt. Exh. 9].

## III. FINDINGS OF FACT

Based upon the testimony and exhibits presented at the November 4, 2019 suppression hearing, the Court makes the following findings of fact:

On October 15, 2018, E911 received several calls requesting that an officer be dispatched to 706 Bates Street. The first call was from Defendant's sister, Kelly Bunch, who identified herself as Ms. Isham's sister-in-law. Ms. Bunch indicated that she received two text messages from Ms.

9

Isham stating, "he's lost it, please hurry, send an officer," and informing the dispatcher that there was a small baby at the residence. A second call came from Ms. Isham's mother, Loretta Isham, who advised that she was on her way to Bates Street to respond to her daughter's text and that Ms. Isham warned her not to approach without "the law," because she and Defendant had been fighting and he had a gun. While Loretta Isham was on the call with the dispatcher, Ms. Isham was able to leave the trailer with the baby and meet up with her mother. Loretta Isham drove her daughter and the baby to the Community Center. Other calls were received by E911, including one from an unidentified female stating she may have heard gunshots from Defendant's house, as well as a call from Defendant himself stating, "my old lady has devised a plan with the next door neighbor" and "she took off on foot with my kid."

Officer Crothers was the first to meet Ms. Isham and her mother at the Community Center, and he began his conversation with them shortly before Sergeant Gray arrived to assist. Officer Crothers was not wearing a bodycam that day, so portions of his conversation with Ms. Isham were not recorded. When Sergeant Gray arrived on the scene, he began recording the conversation with Ms. Isham using his bodycam. Ms. Isham reported to the officers that she was held against her will in the trailer by Defendant, who was her boyfriend and the father of her child; they had gotten into a physical altercation, and Defendant "pistol whipped" her; and Defendant had been tearing up the trailer and had thrown her and the baby to the ground. Officer Crothers observed a large knot above Ms. Isham's right eye, which appeared consistent with being struck with a blunt object.

While Officer Crothers continued his conversation with Ms. Isham, Sergeant Gray stepped away to his police cruiser for a period of time in order to look up information. Ms. Isham told Officer Crothers that she lived at 706 Bates. The address of 706 Bates Street matched Ms. Isham's

car registration, which Sergeant Gray pulled from the Tennessee Criminal Justice Portal. While en route to the call, Sergeant Gray had pulled up information from the portal for both Defendant and Ms. Isham, which listed 706 Bates as their address. Further, on that date, dispatch had reported to the officers that there were several outstanding arrest warrants for Defendant stemming from a pursuit the previous day. Other than the arrest warrants, there were no other flags in the system for Defendant, such as active bond conditions or an active order of protection. Several months prior, Defendant had been the reported victim of a domestic assault, which resulted in bond conditions being placed on Ms. Isham prohibiting her from having contact with Defendant. Records indicated that the case was dismissed in July 2018, which would have resulted in the bond conditions being dismissed at the same time such that there was no protective order against Ms. Isham in Defendant's favor as of October 15, 2018.

After leaving the Community Center, Officer Crothers, along with Captain Pittman and Sergeant Gray, proceeded to the Property at 706 Bates Street, where Defendant was arrested outside the trailer. Defendant was placed in handcuffs and searched incident to the arrest. During the search of Defendant's person, the officers found what was suspected to be methamphetamine wrapped in a dollar bill, as well as Ms. Isham's driver's license. The address on Ms. Isham's driver's license was 706 West Bates Street, which matched the information obtained from the Tennessee Criminal Justice Portal.

Shortly after Defendant's arrest, Sergeant Gray left the scene to respond to another call; however, Captain Pittman later called him back to Bates Street because Defendant's sister, Hannah Close, had called E911 stating that Ms. Isham needed to return to the Property to retrieve items for herself and the baby. When Sergeant Gray met Ms. Isham at Bates Street, he told her, "I would like to like to look in the trailer to locate the gun that [Defendant] had." Ms. Isham gave Sergeant

Gray permission to look for the gun and allowed him to follow her into the trailer. The trailer was rendered unlivable. The outside panels and the ceiling of the trailer had been ripped out so that the inside of the trailer was visible; the refrigerator was tipped over; and the contents of cabinets had been pulled out. Items of women's clothing, as well as baby items, were visible in the trailer. Sergeant Gray located a loaded SCCY 9mm handgun, partly covered in the sink on a stack of dishes, but he was unable to locate a second gun. Sergeant Gray left Ms. Isham with her mother and Hannah Close at the trailer to get her things and the baby items and advised her to call if she located the second gun.

Approximately fifteen minutes after leaving the property, Hannah Close called E911 to report that she and Ms. Isham had found the other gun. Dispatch advised Sergeant Gray that Ms. Isham wanted him to return to the Property to recover it. When Sergeant Gray arrived at Bates Street, Ms. Isham handed him a loaded Taurus G2C 9mm handgun along with a loaded 9mm magazine. Ms. Isham told Sergeant Gray that she found the gun in the bedroom ceiling and pointed out to him the area of the ripped ceiling of the trailer where she discovered it. All of the seized evidence, including two handguns, two 9mm magazines and ammunition, and 1.5 grams of methamphetamine, was turned over to Officer Crothers. Ms. Isham's driver's license was not seized as evidence.

## IV.  ANALYSIS

Defendant challenges the warrantless search of his trailer located at 706 Bates Street, asserting that he had a legitimate expectation of privacy in the property. Defendant claims that Ms. Isham did not have authority to give third party consent to the search and that "[t]he violation of [Defendant's] Fourth Amendment rights is not justified by good faith because the officers were aware of material facts that should have prompted them to inquire further as to Ms. Isham's

12

authority over [the trailer]." Defendant contends that there is no documented evidence that the officers had a reasonable basis to believe that Ms. Isham, his girlfriend and the mother of his infant child, resided at the Property, or that she had authority over the trailer to the extent that she could authorize a search. Defendant asserts that a reasonable person would have to make "arbitrary assumptions" in order to believe that Ms. Isham lived at 706 Bates Street. [*See* Doc. 25 at 5].

However, the Government contends that the search of the trailer was valid under the third-party consent given by Ms. Isham. The Government asserts that Sergeant Gray received verbal consent from Ms. Isham, who had common authority over the trailer in which she cohabited with Defendant and their infant child. In support of its argument, the Government maintains that Ms. Isham herself told officers that she resided at the Property with Defendant and that Sergeant Gray had pulled information from the state portal system showing the address on her car registration as 706 Bates Street.

The Court examines the issue of Ms. Isham's authority to consent to the search, along with the Government's contention that law enforcement's receipt of the second firearm was not the result of a search.

## A. Third-Party Consent

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. "The Fourth Amendment permits a search without a warrant if valid consent to search is given." *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011). The Government must carry the burden by a preponderance of the evidence, demonstrating through clear and positive testimony that law enforcement obtained valid consent. *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010).

13

A warrantless search does not violate the Fourth Amendment when a person with common authority over the premises provides consent for the search. *United States v. Matlock*, 415 U.S. 164, 170-71 (2007). A co-occupant's "common authority" depends not on property rights, but "'on mutual use of the property by persons generally having joint access or control for most purposes.'" *Illinois v. Rodriguez,* 497 U.S. 177, 181 (1990) (quoting *United States v. Matlock,* 415 U.S. 164, 171 n.7 (1974)). "Even if a co-occupant in fact lacks common authority over the premises, a search conducted pursuant to his or her consent will not violate Fourth Amendment guarantees if the police reasonably believed that the co-occupant had such authority." *United States v. Penney*, 576 F.3d 297, 307 (6th Cir. 2009) (citing *Rodriguez,* 497 U.S. at 186), *cert. denied,* 559 U.S. 940 (2010). "Apparent authority is judged by an objective standard." *United States v. Gillis,* 358 F.3d 386, 390 (6th Cir.) (citing *Rodriguez,* 497 U.S. at 188–89), *cert. denied,* 543 U.S. 856 (2004). The question at issue is whether "the facts available to the officer[s] at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises[.]" *Rodriguez,* 497 U.S. at 188 (citation, ellipses, and internal quotation marks omitted). If so, the search is valid; if not, the search is unlawful absent actual authority. *Id.* at 188–89.

Defendant argues that Ms. Isham could not give third party consent to search the trailer, because there was ambiguity over whether she had actual authority to authorize the search, and thus, the officers had a duty to make further inquiry before proceeding. He asserts that the fact he is the father of Ms. Isham's child is not conclusive as to whether she lived at 706 Bates Street, because they were never married and there was a documented history of turbulence between them. [Doc. 25 at 5-6]. At the suppression hearing, Defendant relied upon the Roane County Property Assessor Record listing him as the owner of the Property. [Tr. at 94; Def. Exh. 5]. He also points

to the "recency of the bond condition" that had been placed on Ms. Isham, prohibiting her from having contact with Defendant, and argues that it merited further inquiry on the part of the police. [Doc. 25 at 6]. Defendant also maintains that the circumstances of his arrest and the discovery of Ms. Isham's driver's in his pocket are "uncertain," as well as that Sergeant Gray's "vague accounting" of these particular facts cannot justify a warrantless search based on the third party consent exception. [*Id.* at 6, 8].

In this case, the Court finds that Ms. Isham had both actual and apparent authority to consent to the search of the trailer. In *Fernandez v. California*, the Supreme Court affirmed that "consent by one resident of jointly occupied premises is generally sufficient to justify a warrantless search." 571 U.S. 292, 300 (2014). The Court explained:

> …the lawful occupant of a house or apartment should have the right to invite the police to enter the dwelling and conduct a search. Any other rule would trample on the rights of the occupant who is willing to consent. Such an occupant may want the police to search in order to dispel "suspicion raised by sharing quarters with a criminal." [*Georgia v. Randolph*,] 547 U.S. [103,] 116, 126 S.Ct. 1515 [(2006)]; *see also Schneckloth[ v. Bustamonte]*, 412 U.S. [218,] 243, 93 S.Ct. 2041 [(1973)] (evidence obtained pursuant to a consent search "may insure that a wholly innocent person is not wrongly charged with a criminal offense"). And an occupant may want the police to conduct a thorough search so that any dangerous contraband can be found and removed.

*Id.* at 307; *see also Randolph*, 547 U.S. at 106 (observing that the "Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained").

Here, Sergeant Gray's testimony establishes that Ms. Isham, an occupant of the residence, voluntarily consented to the search of the trailer for the dangerous handguns. During her initial questioning at the Community Center, Ms. Isham had told Sergeant Gray and Officer Crothers that she resided at 706 Bates Street and that Defendant was her boyfriend and the father of her child.

15

This address provided by Ms. Isham matched the address Sergeant Gray found for her on the Tennessee Criminal Justice Portal. When Sergeant Gray met Ms. Isham at the residence, in order for her to gather belongings for herself and the baby, he asked her permission to search for the handguns. Ms. Isham voluntarily consented to the search and permitted Sergeant Gray to follow her into the trailer. Due to the condition of the trailer, Sergeant Gray testified that it was difficult to move around, and his search yielded the discovery of only one loaded handgun. The gun was discovered in a sink of dirty dishes, which would be an area commonly shared by co-habitants. Under these circumstances where Ms. Isham, who jointly occupied the trailer with Defendant, voluntarily gave consent for the search, and the handgun was found in a common area, Sergeant Gray's search did not violate the Fourth Amendment.

Even if Ms. Isham did not have actual authority to consent to the search, at the very least, the facts available would have allowed the officers to reasonably conclude that Ms. Isham had apparent authority to consent. *See Gillis,* 358 F. 3d at 391 (finding the defendant's girlfriend had apparent authority to consent to warrantless search of defendant's residence, even without keys to or personal property at the residence, where she provided detailed information about the premises and statements that she continued to reside there.) The Sixth Circuit has "confirmed a number of times that a live-in girlfriend has common authority over the premises wherein she cohabits with a boyfriend." *Penney,* 576 F.3d at 308. In *United States v. Moore*, the Sixth Circuit held that the defendant's girlfriend, who shared a bedroom with the defendant, was a joint occupant of the residence and had common authority to consent to a search of the residence. 917 F.2d 215, 223 (6th 1990), *cert. denied,* 499 U.S. 963(1991).

While Defendant is listed as the owner of the Property on the Roane County Property Assessor Record [Def. Exh. 5], that alone is insufficient to preclude finding that Ms. Isham

possessed common authority. "The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements." *Matlock,* 415 U.S. at 171 n.7 (citations omitted). "[T]he absence of formalized property rights does not automatically translate into the absence of common authority." *Penney*, 576 F.3d at 309 (citation omitted). In focusing on what was known to officers on October 15, 2018, it is undisputed that Ms. Isham was Defendant's girlfriend and that they were the parents of an infant child. Ms. Isham told the officers that she resided at 706 Bates Street, which matched the address listed for both her and Defendant in the Tennessee Criminal Justice Portal. Moreover, 706 Bates Street was listed as Ms. Isham's address on her driver's license, which was found in Defendant's pocket on the day of his arrest. Both of Defendant's sisters, Ms. Bunch and Ms. Close, who placed calls to E911 that day, identified themselves as Ms. Isham's sister-in-law, and Defendant himself referred to Ms. Isham as his "old lady" and to the baby as "my kid." From these references, one could reasonably deduce that Ms. Isham was in a close relationship with Defendant. Ms. Close specifically relayed that Ms. Isham needed to return to the residence to retrieve items for herself and the baby, and these items were plainly visible when Ms. Isham permitted Sergeant Gray to enter the trailer. Taken together, the particular facts the officers knew about Defendant and Ms. Isham supported their reasonable belief that Ms. Isham co-habited with Defendant and had common authority over the residence.

Further, that fact that at some point there were the bond conditions placed on Ms. Isham as a result of a domestic violence charge that prohibited her from having contact with Defendant does not eradicate the reasonableness of the officers' belief that Ms. Isham possessed common authority. What was known to the officers that day was that those conditions had been dismissed in July 2018, and, thus, there was no protective order against Ms. Isham in Defendant's favor as of October 15, 2018. As recognized by the Sixth Circuit, "cohabitation need not be uninterrupted

to support a reasonable belief in common authority." *Penney*, 576 F3d at 308 (concluding it was reasonable for officers to believe girlfriend had common authority, even if the relationship was known to be turbulent and the couple did not cohabit uninterruptedly.). From all of the information know to the officers, they could reasonably determine that both Defendant and Ms. Isham resided at 706 Bates Street.

The Court has considered Defendant's purported challenge of the officers' credibility during the suppression hearing and finds it to be without merit. Defendant points to the transcript of the January 29, 2019 preliminary hearing held in the Roane County Court, arguing that neither Officer Crothers nor Sergeant Gray mentioned having found Ms. Isham's driver's license on Defendant during that hearing. [Tr. at 113; Doc. 25 at 6]. Given the lack of testimony about Ms. Isham's driver's license at the preliminary hearing, Defendant found it suspect that Officer Crothers testified during the suppression hearing that he discovered the license on Defendant during the arrest, and even more so that he recalled looking at the address on the driver's license. [*Id.* at 6-7]. Further, Defendant raises suspicion about Sergeant Gray's ability to recall that he viewed Ms. Isham's driver's license on an online database on his way to the scene when his testimony during the suppression hearing about other details of the day's events, such as how many times he entered the trailer and who located the gun in the sink, differed from his testimony at the preliminary hearing. [*Id.* at 9]. In essence, Defendant attempts to cast doubt on the officers' testimony that they had reason to believe that Ms. Isham resided at 706 Bates Street.

The Court is not persuaded by Defendant's challenge. As noted by the Government, there are different issues to be considered at a preliminary hearing and a suppression hearing. The fact that the officers were not questioned about Ms. Isham's driver's license at the preliminary hearing in the Roane County Court, does not cast doubt on the testimony given by the officers during the

18

suppression hearing. There can be no finding of inconsistency when there is a complete absence of testimony for comparison. While there were some inconsistencies in Sergeant Gray's recount of the details of the day's events, he explained that his testimony at the preliminary hearing was given without having reviewed his notes and that he corrected his testimony in the suppression hearing. [Tr. at 73-76]. The Court finds the officers' testimony reasonable and credible and that the noted inconsistencies in no way belie Sergeant Gray's testimony during the suppression hearing that he had reason to believe that Ms. Isham resided at 706 Bates Street.

In the present case, Ms. Isham had at least apparent authority to consent to the search of the trailer, and in fact, did freely and voluntarily consent to the search to the extent she "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Matlock,* 415 U.S. at 171. Ms. Isham told the officers that she lived at 706 Bates Street and that Defendant was her boyfriend and the father of their child. She had access to the trailer, which was apparent since she and the baby were living there and their personal belongings were visible inside the trailer. Furthermore, the officers knew Ms. Isham was residing at 706 Bates Street based on the information from her driver's license and the state portal system. Accordingly, while the Court finds that Ms. Isham had actual authority to consent to the search as a co-occupant of the residence, the Court also concludes that under the totality of the circumstances, it was certainly reasonable for the officers to believe that Ms. Isham had common authority over the trailer and that Sergeant Gray was reasonable in his belief at the time of the search that Ms. Isham had the apparent authority to consent. *Rodriguez*, 497 U.S. at 179-80.

### B. Second Firearm Not Seized as Part of Search

As a final matter, the Government contends that law enforcement's receipt of the second firearm was not the result of a search. As recounted by Sergeant Gray, after having searched and

found one handgun in the sink of the trailer, he left Ms. Isham with her mother and Hannah Close at the property to gather belongings for herself and the baby. Approximately fifteen minutes later, Ms. Close called E911 to report that she and Ms. Isham had located the other gun, and dispatch advised Sergeant Gray that Ms. Isham wanted him to return to the Property to recover it. Upon his arrival, Ms. Isham handed him a loaded Taurus G2C 9mm handgun along with a loaded 9mm magazine. Ms. Isham told Sergeant Gray that she found the gun in the bedroom ceiling and pointed out to him the area of the ripped ceiling where she located it.

The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (*citing Camera v. Municipal Court of San Francisco,* 387 U.S. 523, 528 (1967)). Here, Defendant is aggrieved only through the introduction of damaging evidence voluntarily relinquished by Ms. Isham to law enforcement officials. The Fourth Amendment "proscrib[es] only governmental action; it is wholly inapplicable "'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). In this instance, Sergeant Gray did not conduct a search resulting in the discovery of the handgun and magazine, but rather they were handed to him by Ms. Isham, after she and Ms. Close reported to E911 that they had discovered the weapon.[12] Because this particular evidence

---

[12] The Defendant does not argue that Ms. Isham was acting as an agent of law enforcement, when she found and turned over the second gun. However, the Court finds that even if Ms. Isham's relinquishment of the second gun to law enforcement could be considered a search under the Fourth Amendment, she had actual authority to consent to such a search as discussed in Part A above. Accordingly, no Fourth Amendment violation occurred.

20

was not secured by a search of the Property, Defendant's Fourth Amendment rights were not infringed; and thus, there is no basis for suppression of the evidence.

### C. Good Faith Exception to the Exclusionary Rule

The Government argues that, if the Court finds that the officers violated the Fourth Amendment by seizing the two handguns from the Defendant's trailer, the guns should not be excluded from evidence at trial, because the officers acted in good faith. Although the Supreme Court recognizes a good faith exception to the exclusionary rule, *see United States v. Herring*, 555 U.S. 135, 139-40 (2009) and *United States v. Leon*, 468 U.S. 897, 909 (1984), the Court need not analyze whether such exception applies in the instant case. The Court has found no Fourth Amendment violation, so the good faith exception does not come into play in this case.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 21] be **DENIED**.[13]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[13] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).