UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | No. 3:19-CR-54 |
| | ) | REEVES/POPLIN |
| DANIEL CLOSE | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

The Honorable Debra C. Poplin, United States Magistrate Judge, filed a 21-page Report and Recommendation ("R&R") [D. 27], in which she recommended that Daniel Close's ("Defendant") Motion to Suppress and Memorandum in Support [D. 21] be denied.

This matter is before the Court for consideration of Defendant's objections [D. 28] to the Report and Recommendation. As required by 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b), the Court has now undertaken a de novo review of those portions of the Report and Recommendation to which Defendant objects. FED. R. CRIM. P. 59(b)(3). For the reasons that follow, the Court finds that Defendant's objections are meritless, and the objections will be overruled.

**I.    Factual Findings**

Defendant has raised three specific objections to the R&R's factual determinations. The Court will recount Judge Poplin's findings, then turn to Defendant's objections. Judge Poplin's factual findings, based on the testimony of Officer Charles Crothers, Sergeant Dwayne Gray, and Special Agent Jason Dobbs and several exhibits presented by the parties, are as follows:

On October 15, 2018, E911 received several calls requesting that an officer be dispatched to 706 Bates Street. The first call was from Defendant's sister, Kelly Bunch, who identified herself as Ms. [Olivia] Isham's sister-in-law. Ms. Bunch indicated that she received two text messages

1

from Ms. Isham stating, "he's lost it, please hurry, send an officer," and informing the dispatcher that there was a small baby at the residence. A second call came from Ms. Isham's mother, Loretta Isham, who advised that she was on her way to Bates Street to respond to her daughter's text and that Ms. Isham warned her not to approach without "the law," because she and Defendant had been fighting and he had a gun. While Loretta Isham was on the call with the dispatcher, Ms. Isham was able to leave the trailer with the baby and meet up with her mother. Loretta Isham drove her daughter and the baby to the Community Center. Other calls were received by E911, including one from an unidentified female stating she may have heard gunshots from Defendant's house, as well as a call from Defendant himself stating, "my old lady has devised a plan with the next door neighbor" and "she took off on foot with my kid."

Officer Crothers was the first to meet Ms. Isham and her mother at the Community Center, and he began his conversation with them shortly before Sergeant Gray arrived to assist. Officer Crothers was not wearing a bodycam that day, so portions of his conversation with Ms. Isham were not recorded. When Sergeant Gray arrived on the scene, he began recording the conversation with Ms. Isham using his bodycam. Ms. Isham reported to the officers that she was held against her will in the trailer by Defendant, who was her boyfriend and the father of her child; they had gotten into a physical altercation, and Defendant "pistol whipped" her; and Defendant had been tearing up the trailer and had thrown her and the baby to the ground. Officer Crothers observed a large knot above Ms. Isham's right eye, which appeared consistent with being struck with a blunt object.

While Officer Crothers continued his conversation with Ms. Isham, Sergeant Gray stepped away to his police cruiser for a period of time in order to look up information. Ms. Isham told Officer Crothers that she lived at 706 Bates. The address of 706 Bates Street matched Ms. Isham's

car registration, which Sergeant Gray pulled from the Tennessee Criminal Justice Portal. While en route to the call, Sergeant Gray had pulled up information from the portal for both Defendant and Ms. Isham, which listed 706 Bates as their address. Further, on that date, dispatch had reported to the officers that there were several outstanding arrest warrants for Defendant stemming from a pursuit the previous day. Other than the arrest warrants, there were no other flags in the system for Defendant, such as active bond conditions or an active order of protection. Several months prior, Defendant had been the reported victim of a domestic assault, which resulted in bond conditions being placed on Ms. Isham prohibiting her from having contact with Defendant. Records indicated that the case was dismissed in July 2018, which would have resulted in the bond conditions being dismissed at the same time such that there was no protective order against Ms. Isham in Defendant's favor as of October 15, 2018.

After leaving the Community Center, Officer Crothers, along with Captain Pittman and Sergeant Gray, proceeded to the property at 706 Bates Street, where Defendant was arrested outside the trailer. Defendant was placed in handcuffs and searched incident to the arrest. During the search of Defendant's person, the officers found what was suspected to be methamphetamine wrapped in a dollar bill, as well as Ms. Isham's driver's license. The address on Ms. Isham's driver's license was 706 West Bates Street, which matched the information obtained from the Tennessee Criminal Justice Portal.

Shortly after Defendant's arrest, Sergeant Gray left the scene to respond to another call; however, Captain Pittman later called him back to Bates Street because Defendant's sister, Hannah Close, had called E911 stating that Ms. Isham needed to return to the Property to retrieve items for herself and the baby. When Sergeant Gray met Ms. Isham at Bates Street, he told her, "I would like to like to look in the trailer to locate the gun that [Defendant] had." Ms. Isham gave Sergeant

3

Gray permission to look for the gun and allowed him to follow her into the trailer. The trailer was rendered unlivable. The outside panels and the ceiling of the trailer had been ripped out so that the inside of the trailer was visible; the refrigerator was tipped over; and the contents of cabinets had been pulled out. Items of women's clothing, as well as baby items, were visible in the trailer. Sergeant Gray located a loaded SCCY 9mm handgun, partly covered in the sink on a stack of dishes, but he was unable to locate a second gun. Sergeant Gray left Ms. Isham with her mother and Hannah Close at the trailer to get her things and the baby items and advised her to call if she located the second gun.

Approximately fifteen minutes after leaving the property, Hannah Close called E911 to report that she and Ms. Isham had found the other gun. Dispatch advised Sergeant Gray that Ms. Isham wanted him to return to the Property to recover it. When Sergeant Gray arrived at Bates Street, Ms. Isham handed him a loaded Taurus G2C 9mm handgun along with a loaded 9mm magazine. Ms. Isham told Sergeant Gray that she found the gun in the bedroom ceiling and pointed out to him the area of the ripped ceiling of the trailer where she discovered it. All of the seized evidence, including two handguns, two 9mm magazines and ammunition, and 1.5 grams of methamphetamine, was turned over to Officer Crothers. Ms. Isham's driver's license was not seized as evidence.

In the objections before the Court, Defendant has objected to the factual finding that the officers asked Ms. Isham where she lived, to which she indicated 706 Bates Street, that Ms. Isham's driver's license was recovered from the Defendant's pocket during his arrest, and that Sergeant Gray searched the online portal for Ms. Isham's address. Each factual dispute will be addressed in context of Defendant's arguments.

## II. Objections

The Defendant raises three objections to the R&R. First, Defendant argues that the search was unlawful because ambiguity existed as to whether Olivia Isham ("Ms. Isham") lived at 706 Bates Street and the officers did not meet their duty to inquire further. Specifically, Defendant asserts that the officers in this case did not ask Ms. Isham where she lived. Defendant argues that there was ambiguity about whether Ms. Isham had authority to consent to the warrantless search, and the officers' failure to ask made their beliefs that she had authority unreasonable. Further Defendant argues that the officers ignored Ms. Isham's expired court order prohibiting her from having contact with Defendant, which created the ambiguity that demanded further inquiry regarding her authority to consent. Second, Defendant argues that the officer's assumptions that Ms. Isham had authority over the property because of her relationship with Mr. Close and the fact that they share a child were unreasonable. Third, Defendant contests the factual findings that Ms. Isham's license was recovered from the Defendant and that Sergeant Gray searched for Ms. Isham's address in the online portal en route to the scene.

At the outset, the Court notes that the R&R made the finding that "Ms. Isham had both actual and apparent authority to consent to the search of the trailer." [D. 27 at p. 15]. The Defendant has not specifically challenged the R&R's finding of actual, common authority and only focuses on apparent authority. While the objection does broadly state that "[n]o lawful exception to the warrant requirement under the Fourth Amendment applies to the facts of this case," the Defendant had a "duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *United States v. Joyner*, No. 3:14-CR-124-PLR-CCS, 2016 WL 2350137, at *1 (E.D. Tenn. May 4, 2016) (quoting *Cincinnati Ins. Co. v. Grand Pointe LLC*, 501 F. Supp. 2d 1145, 1153 (E.D. Tenn. 2007)).

Even if the Court granted Defendant's objections regarding apparent authority, the R&R's finding of actual authority remains uncontested; "absent a specific objection, the district court may adopt conclusions reached by the magistrate judge without discussion." *Id.* (citing *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Cline v. City of Mansfield*, 745 F.Supp.2d 773, 787 (N.D. Ohio 2010)). The Court will adopt the R&R's conclusion that Ms. Isham had actual, common authority to consent to the search as there have been no specific objections. As the Supreme Court has made clear, even if apparent authority is lacking due to an officer's failure to make further inquiry, actual authority to consent makes the warrantless search valid. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990). Nevertheless, the Court will address each of Defendant's objections regarding apparent authority in turn.

### A. "The search was unlawful because ambiguity existed as to whether Olivia Isham lived at 706 Bates Street and the officers had a duty to inquire further."

Defendant objects to the finding that the officers were reasonable in their belief that Ms. Isham had authority to consent to a warrantless search of the trailer. Specifically, Defendant argues that there was ambiguity in her authority to consent and the officers did not fulfill their duty to inquire further. The Defendant asserts that two key pieces of evidence establish that the officers did not meet their duty: (1) Officer Crothers' testimony was conflicting about whether he actually asked Ms. Isham where she lived prior to relying on her consent; and (2) Sergeant Gray never asked whether Ms. Isham where she lived. Further, Defendant argues that Officer Crothers and Sergeant Gray ignored an expired court order prohibiting Ms. Isham from being present at the property, which compelled further inquiry regarding her authority to consent.

Fourth Amendment protections against unreasonable searches or seizures permit "a search without a warrant if valid consent to search is given." *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011). The Government must carry the burden by a preponderance of the evidence,

demonstrating through clear and positive testimony that law enforcement obtained valid consent. *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010).

Valid consent may be provided by a third person with common authority over the premises. *United States v. Matlock*, 415 U.S. 164, 170–71 (2007). A co-occupant's "common authority" depends not on property rights, but "'on mutual use of the property by persons generally having joint access or control for most purposes.'" *Rodriguez*, 497 U.S. at 181 (quoting *Matlock*, 415 U.S. at 171 n.7). To that end, the Sixth Circuit has "confirmed a number of times that a live-in girlfriend has common authority over the premises wherein she cohabits with a boyfriend." *United States v. Penney*, 576 F.3d 297, 308 (6th Cir. 2009) (citing *United States v. Grayer*, 232 F. App'x 446, 449 (6th Cir. 2007); *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005); *United States v. Gillis*, 358 F.3d 386, 391 (6th Cir. 2004); *United States v. Moore*, 917 F.2d 215, 223 (6th Cir. 1990)).

Further, "[e]ven if a co-occupant in fact lacks common authority over the premises, a search conducted pursuant to his or her consent will not violate Fourth Amendment guarantees if the police reasonably believed that the co-occupant had such authority." *United States v. Penney*, 576 F.3d 297, 307 (6th Cir. 2009) (citing *Rodriguez*, 497 U.S. at 186), *cert. denied*, 559 U.S. 940 (2010). "Apparent authority is judged by an objective standard." *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004) (citing *Rodriguez*, 497 U.S. at 188–89), *cert. denied*, 543 U.S. 856 (2004). Disputes over apparent authority compel a court to ask whether "the facts available to the officer[s] at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises[.]" *Rodriguez*, 497 U.S. at 188 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)) (ellipses and internal quotation marks omitted). However, "[w]hen a situation starts as unambiguous but subsequent discoveries create ambiguity, any apparent authority evaporates." *United States v. Purcell*, 526 F.3d 953, 964 (6th Cir. 2008) (citing *Rodriguez*, 497 U.S. at 188

("Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry."); *United States v. Jenkins*, 92 F.3d 430, 437 (1996) ("Of course, if the consenter provides additional information, the context may change in such a manner that no reasonable officer would maintain the default assumption.")). Ultimately, "the reasonableness of police officers' beliefs is evaluated in light of all particular facts known to the officers, not by abstracting from the particulars." *Penney*, 576 F.3d at 309. If the officers' beliefs that the third party had authority to consent are objectively reasonable, the search is valid; if not, the search is unlawful absent actual authority. *Rodriguez*, 497 U.S. at 188–89.

Here, Defendant contends that ambiguity existed as to whether Ms. Isham had authority to consent to a search of the trailer that created a duty for the officers to inquire further. This argument fails for two reasons. First, any countervailing facts regarding previous disruptions in Ms. Isham's residence at 706 Bates Street did not rise to the level of "ambiguity" against the backdrop of other facts known by the officers. Second, even if ambiguity was created regarding Ms. Isham's residence, the officers made further inquiry to confirm her authority to consent to a search.

### 1. There was no ambiguity regarding Ms. Isham's residence based on all of the facts known to officers at the time.

First, Ms. Isham's authority was not ambiguous, even without considering the facts disputed by the Defendant. The officers knew that Ms. Isham was Defendant's girlfriend and that they were the parents of an infant child. In context, this was an indicator that Ms. Isham resided at 706 Bates Street, particularly in light of Defendant's E911 call. In that call, Defendant stated that "my old lady has devised a plan with the next-door neighbor" and "she took off on foot with my kid," which can be reasonably construed as an indicator that Ms. Isham resided with the

Defendant amidst the constellation of other E911 calls that indicated that the infant was at the residence and that Ms. Isham and the infant departed from the residence. These facts produce a reasonable belief that Ms. Isham cohabitated with the Defendant and shared a close relationship. Further, another E911 call indicated that Ms. Isham needed to return to the residence to retrieve personal items for herself and the infant, further strengthening the reasonableness of that belief.

Granted, the officers were aware of a previous domestic violence charge against Ms. Isham that included bond conditions prohibiting her from contacting the Defendant. "[I]f an occupant with formal authority over the premises takes affirmative and unambiguous action to break relations with a live-in lover and to exclude the latter from the formerly shared dwelling, it may not be reasonable to believe that the latter retains common authority to consent to a search." *Penney*, 576 F.3d at 309. However, as the officers were aware, Ms. Isham's case had been dismissed, along with the contact restrictions, months before. More recent indicators, such as the E911 calls, including that of Defendant, supported the reasonable belief that Ms. Isham had returned to live at 706 Bates Street since the order's expiration. Relational turbulence and on-and-off cohabitation do not render Ms. Isham's authority to consent ambiguous. *Penney*, 576 F.3d at 308; *Gillis*, 358 F.3d at 388, 391. Rather, "the reasonableness of police officers' beliefs is evaluated in light of all particular facts known to the officers, not by abstracting from the particulars." *Id.* It was objectively reasonable to believe that Ms. Isham had the authority to consent to a search by this standard and no ambiguity existed.

## 2. Even had there been ambiguity, the officers made a further inquiry.

Second, even if there was ambiguity, the officers made a further inquiry. The R&R made the factual finding that the officers asked Ms. Isham where she lived. The Defendant contests this finding, arguing that the officers never asked, and Ms. Isham never indicated, that she lived at 706

9

Bates Street. Specifically, Defendant references Officer Crothers' testimony during the Evidentiary Hearing following the presentation of bodycam footage where he testified that Ms. Isham told him that she lived at "706 Bates" and confirmed that he understood that she lived with Defendant. Defendant asserts that such an exchange between Officer Crothers and Ms. Isham did not occur on the footage and that Officer Crothers' testimony in various contexts is "confusing and conflicting." However, as the R&R points out, the bodycam footage came from Sergeant Gray, who had stepped away from the conversation for a period of time to look at information from his police cruiser that he had pulled up en route. The question and answer regarding Ms. Isham's address was found to have occurred during this period of time.

Officer Crothers' testimony on the matter is not "inconsistent" as Defendant claims. Initial questioning during the Evidentiary Hearing revealed that Ms. Isham told Officer Crothers that she lived at "706 Bates" and that he understood that she lived with Defendant. During later questioning Officer Crothers expressed some difficulty recalling details of the exchange that had occurred a year prior. Subsequent clarifying questions made it clear that Officer Crothers asked Ms. Isham where she was living and that she stated that she lived with Defendant. Judge Poplin found this testimony to be credible. When the reliability of testimony is at issue, courts are "generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor." *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001); *see also United States v. Rose*, No. 3:17-CR-41.1, 2017 WL 4404394, at *2 (E.D. Tenn. Oct. 4, 2017), *aff'd*, No. 18-5279, 2018 WL 7821668 (6th Cir. Aug. 24, 2018). Finding no readily apparent contradictions, the Court will defer to Judge Poplin's credibility determinations.

Further, when Sergeant Gray stepped away from the conversation, he was reviewing information he had pulled up from the Tennessee Criminal Justice Portal, which had listed 706 Bates Street as the address for both Ms. Isham and Defendant. Further still, during the subsequent arrest of the Defendant, Ms. Isham's driver's license was retrieved from his pocket, and the license indicated that Ms. Isham lived at 706 Bates Street.[1] Sergeant Gray briefly left the property to respond to another call and then returned when Ms. Isham needed to retrieve personal items for herself and her infant from the trailer. When Sergeant Gray returned, Ms. Isham had access to the trailer. Following Ms. Isham's consent to a search of the trailer by Sergeant Gray, items of women's clothing and baby items were immediately visible.

In sum, Ms. Isham's common authority to consent to the warrantless search of the trailer was not ambiguous "in light of all particular facts known to the officers." *Penney*, 576 F.3d at 309. Even if there was ambiguity created regarding her authority, the officers made further inquiry. The officers' beliefs that Ms. Isham had authority to consent to a search of the trailer were objectively reasonable. Defendant's first objection will be overruled.

> **B. "The officers' assumption that Ms. Isham had authority over the property because of her relationship with Mr. Close and the fact that they share a child was unreasonable."**

Defendant also challenges the significance placed on the relationship between Ms. Isham and the Defendant in determining the reasonableness of the officers' belief that Ms. Isham had authority to consent to the warrantless search. Specifically, Defendant argues that the officers relied on outdated assumptions that couples with children in common generally cohabitate, citing various family structures that differ.

---

[1] Both of these factual findings are contested as well, but are addressed during the discussion of Defendant's specific objection to those facts in Section II.C.

Again, the reasonableness of an officers' belief that a third party had authority to consent to a warrantless search must be objectively reasonable based on all of the facts known to the officers, not abstractions. *Rodriguez*, 497 U.S. at 188 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)); *Penney*, 576 F.3d at 309.

Here, Defendant essentially argues that it was unreasonable for the officers to consider the relationship between Defendant and Ms. Isham as an indicator that Ms. Isham had common control over the trailer. Defendant contends that may couples with children do not live together, marry, or cohabitate, and that any assumption that a shared child indicates common authority is "groundless." However, any assumptions that the officers may or may not have drawn from the shared parentage of the infant cannot be properly isolated from the other facts known to the officers in the manner that the Defendant urges upon the Court. *See Penney*, 576 F.3d at 309. The Court will not "abstract[] from the particulars," *id.*, and will overrule Defendant's second objection.

### C. "The alleged fact of Ms. Isham's license is unreliable and should not weigh in favor of a finding of reasonableness of the third-party search."

Defendant further challenges the R&R's factual finding that Ms. Isham's driver's license was recovered from the Defendant's pocket upon his arrest. Further, Defendant argues that the stated residence on Ms. Isham's license, 706 Bates Street, should not be considered when evaluating the reasonableness of the officers' beliefs that Ms. Isham had authority to consent. Likewise, Defendant challenges the reliability of Sergeant Gray's testimony that he checked the online portal for Ms. Isham's address.

Again, "the reasonableness of police officers' beliefs is evaluated in light of all particular facts known to the officers, not by abstracting from the particulars." *Penney*, 576 F.3d at 309. When the reliability of testimony is at issue, courts are "generally reluctant to set aside credibility

determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor." *Peveler*, 269 F.3d at 702.

Here, Defendant argues that Officer Crothers testified for the first time at the suppression hearing that he retrieved Ms. Isham's license from the Defendant and looked at the license. Defendant argues that this testimony is unreliable, asserting that this testimony conflicts with his previous testimony at the Roane County Preliminary Hearing. However, as the R&R notes, there are different issues considered in preliminary hearings and suppression hearings. Nevertheless, Defendant emphasizes that both Officer Crothers and Sergeant Gray were asked about the contents of Defendant's pockets at the Roane County Preliminary Hearing. During the Preliminary Hearing, Officer Crothers could not recall the items removed from Defendant's pockets. Sergeant Gray was not asked specifically about the contents of Defendant's pockets but stated that he collected the items. At the Evidentiary Hearing, Officer Crothers testified that Ms. Isham's license was among those belongings collected from Defendant, and Sergeant Gray testified that he saw the license briefly. Sergeant Gray further testified that he checked the online portal for Ms. Isham's address, which was listed as 706 Bates Street. Defendant also argues that if the Court finds Sergeant Gray's testimony that he searched Ms. Isham's address in the online portal to be credible, that this Court should also consider that Sergeant Gray did not verbally confirm Ms. Isham's address on arrival.

As before, the testimony of Officer Crothers and Sergeant Gray at the Roane County Preliminary Hearing and the Evidentiary Hearing on these two facts does not "conflict" as Defendant argues. At most, the testimony reflects differing degrees of recall. Ultimately, Judge Poplin observed Officer Crothers' and Sergeant Gray's testimony and found it to be credible. [D.

13

27 at p. 18–19]. Finding no readily apparent contradictions, the Court will defer to Judge Poplin's credibility determinations.

Likewise, the Court has considered the possibility that Sergeant Gray could have verbally confirmed Ms. Isham's address after receiving confirmation from the online portal. But again, this Court must consider whether the officers' belief that Ms. Isham had common authority over the trailer is objectively reasonable "in light of *all* particular facts known to the officers." *Penney*, 576 F.3d at 309 (emphasis added). As discussed, there was no ambiguity demanding further inquiry. Even if there had been ambiguity, Sergeant Gray's testimony that he made further electronic inquiry was found to be credible. [D. 27 at p. 19]. The Court will overrule Defendant's third objection and will adopt the R&R's factual findings that Ms. Isham's driver's license was recovered from the Defendant and that Sergeant Gray searched the online portal for Ms. Isham's address.

### III. Conclusion

After a careful review of the record, the court is in complete agreement with Judge Poplin's recommendation that Defendant's motion to suppress be denied. Accordingly, the court **ACCEPTS IN WHOLE** the Report and Recommendation under 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b). It is **ORDERED**, for the reasons stated in the Report and Recommendation, which the court adopts and incorporates into its ruling, that Defendant's motion to suppress [D. 21] is **DENIED**.

**IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**